[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 34 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 36 
The parties to the suits in chancery, mentioned in the arbitration bond on which the present action is brought, were at issue in respect to the claims of some of them to be equitably entitled to have certain lands conveyed to them in fee, but there was no controversy between them respecting the legal title to the lands. At the trial the question was presented whether such a controversy *Page 37 
could be submitted to arbitration under the statute concerning arbitrations. (2 R.S., 541, §§ 1, 2.) Omitting such qualifications as have no bearing upon the question presented, the 1st section provides that all persons may submit to the decision of arbitrators "any controversy existing between them which might be the subject of an action at law, or of a suit in equity" except as therein otherwise provided. The exceptions follow in the next section in these terms: "no such submission shall be made respecting the claim of any person to any estate, in fee or for life, to real estate; but any claim to an interest for a term of years, or for one year or less in real estate, and controversies respecting the partition of lands between joint tenants, or tenants in common, or concerning the boundaries of lands, or concerning the admeasurement of dower, may be so submitted to arbitration." The question therefore is as to the meaning of the words "any estate in fee or for life to real estate," for no submission can be made respecting the claim of any person to such an estate. These words are the appropriate terms to designate legal title, and of themselves distinguish between it and those interests which from analogy are called equitable estates and titles. Upon an agreement for an estate in fee or for life to or in real estate, no doubt could be entertained that a legal estate alone would answer the requirement. The terms in question originally were only employed to designate legal titles, and when equitable rights afterwards grew up and gained recognition, and were moulded into forms analogous to legal estates, these came to be designated as equitable estates in fee or for life. But the original sense has been preserved as the proper and legal force of the words. The whole title "Of the nature and qualities of estates in real property" (1 R.S., 721) makes this entirely manifest.
The question has not heretofore been distinctly and formally determined. In German v. Machin (6 Paige, 290), the chancellor expresses an opinion that an equitable claim to *Page 38 
a fee was within the exception. The question, however, was not before him, as the agreement of which he was speaking was not in writing, and so, clearly was not embraced by the provisions of the 1st section. On the other hand, upon a motion to vacate this award in the supreme court, Bronson, C.J., gave his opinion (after disposing of the motion on other grounds) that the submission in this case was not within the exception in the 2d section.
Prior to the Revised Statutes such claims as existed between these parties might have been submitted and determined by arbitration (Watson on Arb., 62, 63; 3 R.S., 774, note to § 2); but in regard to title to the freehold or inheritance at an early period it was held, that it could not be determined by arbitrament. That rule was deprived of its efficacy by its being decided that though the award would not pass the title, yet it would estop the parties. (Doe v. Rosser, 3 East., 15;Sellick v. Addams, 15 John. R., 197.) The object of the statute seems to have been to restore the old rule of the common law, and perhaps to carry out its principle further than the old rule had gone, and at the same time to prevent effectually its evasion. Its policy was to remove from the usually unlearned forum of arbitrators questions of title to estates in land in fee or for life, which perhaps more than any other class of questions depended upon principles of technical learning. These considerations would apply with much less force to controversies in respect to equitable rights to have legal titles, which ordinarily would depend upon broader principles of justice. There was, therefore, reasonable ground in the difference between the two classes of cases, for the adoption of a different policy in each, and to this is probably to be attributed the limitation by the legislature of the exception to questions of legal title.
The judgment should be affirmed. *Page 39